IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLIN T.,[1]

       Plaintiff,                                            Civ. No. 6:17-cv-01477-MC

       v.                                                   OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

MCSHANE, Judge:

Plaintiff, proceeding *pro se*, brings this action for judicial review of the Commissioner's decision denying his application for social security disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On June 17, 2009, Plaintiff filed an application for benefits, ultimately alleging disability as of May 5, 2008. Tr. 830.[2] After a hearing, the administrative law judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act through December 31, 2013, Plaintiff's last date insured. Tr. 830-45.[3] Plaintiff argues the ALJ erred in finding him less-than fully credible and in rejecting certain lay witness testimony.[4] Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.
[3] This is the second time the ALJ found Plaintiff not disabled under the Act. A District Judge reversed and remanded the ALJ's May 10, 2012 decision for further proceedings.
[4] Plaintiff also argues the ALJ wrote that the Dr. Schosheim, an impartial medical expert was present when in fact Dr. Schosheim appeared by telephone. The ALJ noted Dr. Schosheim as "also appearing and testifying." Tr. 830. The regulations, however, provide that witnesses may appear by telephone. 20 C.F.R. § 404.950(e).

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: a personality disorder; marijuana abuse; degenerative disc disease; and fibromyalgia. Tr. 833. The ALJ concluded Plaintiff had the RFC to perform light work with the following relevant limitations: he could lift and carry 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk for four hours and sit for six hours in an eight-hour workday; he could no more than occasionally climb ramps and stairs, balance, kneel, crouch, stoop, and crawl; he was limited to simple routine tasks and could have no public contact or teamwork, and only occasional contact with coworkers. Tr. 835.

Plaintiff first alleges the ALJ erred in finding him less-than fully credible as to the extent of his limitations. Plaintiff argues the ALJ "specifically referred to a 'robust lifestyle' based on several statements that are proven otherwise in the court records. They were taken out of context, embellished and misstated in the final decision." Pl.'s Br. 1; ECF No. 20. At the hearing, the ALJ asked Plaintiff if he took his four children to the park. Plaintiff answered: "We go to the park, yeah, the park, swimming and those type of things." Tr. 92. Plaintiff argues the above example is but one example of the ALJ taking his statements out of context, and clarifies in his brief that "I take my children down to the river in the summer so THEY can go swimming while I sit and supervise with my wife." Pl.'s Br. 1.

Plaintiff also testified at the hearing that he was "not really" looking for work but would take work if the right job was available: "If something small was to come available, just very part-time or something, I'd probably jump on it just to get me through. Other than that, I honestly haven't really been looking." Tr. 87. Plaintiff testified that he received unemployment benefits

during the time he alleged he was disabled, and that during the relevant time period, he probably could have worked full time as a cashier. Tr. 88. Plaintiff also testified he volunteered at his church one day each week, where he vacuums, sweeps the floors, and pick up garbage. Tr. 56.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ had to balance Plaintiff's daily activities against his alleged limitations. These limitations included: that Plaintiff could walk for ¼ of a mile before getting winded and having to sit down, Tr. 51; that Plaintiff could sit for a maximum of 45 minutes at one time and lift only 20 pounds, Tr. 90-91; that Plaintiff has trouble grasping things with his right hand; Tr. 96; that Plaintiff experiences debilitating pain in his knees, hips, and shoulders that is typically a four-to-five on a ten-point scale, Tr. 96; and that he smokes marijuana for his pain but uses no other medications, Tr. 88. The ALJ's interpretation of Plaintiff's answers regarding his daily activities is a reasonable interpretation of the evidence. However, even assuming the ALJ took Plaintiff's statements out-of-context, the ALJ pointed to several other factors that indicated Plaintiff was not fully credible as to his limitations.

The ALJ pointed to evidence of secondary gain. Evidence of secondary claim, or that the Plaintiff is malingering, is relevant to the ALJ's credibility determination. *Merillat v. Comm'r of Soc. Sec. Admin.*, 350 Fed. Appx. 163, 166 (9th Cir. 200) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). This finding is supported by substantial evidence in the record. The ALJ pointed to an October 2008 note from Plaintiff's treating physician:

> The patient's main concern, though, pertains to his disability determination. He tells me that his request for permanent disability was denied and he states that in part it was denied on the grounds that he had never had a formal mental health evaluation. The patient tells me that actually if his condition is determined to by psychosocial in nature that this would in fact allow him to qualify for disability. I find this is very interesting because if the reader will refer to my past dictations I have always suspected a psychological basis to his symptoms; however, the patient in the past had been very nonreceptive to that idea and in fact quite defensive about it but it seems tat at this point he is much more willing to entertain that type of diagnosis.

Tr. 373.

The ALJ also pointed to a November 2008 note from Dr. Smurthwaite, who performed a psychological examination of Plaintiff. Tr. 838. Dr. Smurthwaite noted:

> For many patients there is secondary gain involved in somatization. The current assessment did not attempt to identify possible sources of secondary gain for [Plaintiff]. Time off work and sympathy and attention from others are typical sources of secondary gain. Given the patient's extensive time away from work, there is the possibility of secondary gain and he should be encouraged to return to work if his symptoms permit, perhaps part-time to start with.

Tr. 367.

The ALJ also noted Plaintiff's allegations of memory impairments were "inconsistent with the results of mental status testing, which have revealed no significant cognitive abnormalities." Tr. 839. This finding is supported by substantial evidence int the record. Tr. 367. Dr. Robinann Cogburn performed a psychological examination of Plaintiff. Dr. Cogburn noted that although Plaintiff had "mild difficulty on a task requiring him to remember narrative

information that he heard once, . . . His performance on other measures of immediate and delayed recall were in the average to high average range." Tr. 808.

The ALJ also noted Plaintiff made inconsistent statements to various psychologists. Tr. 839. "The claimant denied any history of anger issues to Dr. Goodale in April 2010. However, Dr. Goodale reported that she found this inconsistent with his report that he had been arrested on two occasions for domestic abuse and received anger behavioral modification therapy from September 2008 through January 2010." Tr. 840. Another psychologist noted:

> In addition to the evidence of conversion disorder, there was also evidence of a mixed personality disorder with narcissistic, paranoid, and antisocial features. [Plaintiff] describes a life-long history of marked interpersonal difficulties. He says he has been seen as difficult to deal with and has been accused of being verbally offensive, violent to his spouse, and abusive to his children. He has been convicted of assault twice. He says neighbors and school staff have made repeated reports over several years about alleged child mistreatment. He was fired from one job after a confrontation with a co-worker and quit other jobs because of disagreements with supervisors. Two doctors have refused to provide care due to his behavior. Records contain documentation of another incident in which he expressed dissatisfaction and intent to sue when a doctor did not offer treatment that [Plaintiff] desired.

Tr. 807.

Dr. Cogburn noted other inconsistent responses during her examination:

> Content of speech was adequately organized and relevant to the topics at hand but notable for some inconsistencies. There were minor inconsistencies between his statements during this evaluation, and statement noted from past evaluations. He also revised his statements within the interview at times. For example, while discussing his substance abuse history he said that he had been taking oxycodone for pain in 2009. He was asked whether he was on a narcotic contract at that time and responded: "No." When this was further explored, he said he was on a contract, but was in compliance.

Tr. 803.

Finally, the ALJ noted that Plaintiff was not compliant with treatment plans from his medical providers. Specifically, the ALJ noted that despite a chief complaint of chronic pain, Plaintiff failed to follow through with the recommendation from his rheumatologist, who

6 – OPINION AND ORDER

Plaintiff had been referred to treat his chronic pain. Tr. 839. That rheumatologist recommended that Plaintiff stop smoking marijuana so doctors "could try him on other agents for his pain like tramadol, muscle relaxant, antidepressants." Tr. 818. Plaintiff stated "he would like to consider getting off marijuana and he will schedule a follow up with his PCP." Tr. 818. However, at the hearing, the Plaintiff admitted he failed to follow the advice of his rheumatologist. Tr. 839. The ALJ reasonably concluded that one alleging disabling chronic pain would follow the treatment recommendations of a rheumatologist (i.e., a specialist in treating chronic pain) and that Plaintiff's failure to do so suggested his limitations were not as severe as alleged.

Even assuming, without deciding, that the ALJ misconstrued Plaintiff's statements regarding his activities of daily living, the ALJ provided multiple other "specific, clear and convincing reasons" for rejecting Plaintiff's testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")).

Plaintiff also argues the ALJ erred in rejecting the lay witness testimony from his spouse and a former employer. An ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511.

Further, it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

Plaintiff's spouse completed a questionnaire dated August 21, 2009. Tr. 226. The spouse's comments generally aligned with Plaintiff's own alleged limitations but, as noted by the ALJ, were inconsistent with Plaintiff's activities of daily living, normal examination results, and indications that Plaintiff's symptoms arose from psychogenic causes. Tr. 843. The spouse indicated Plaintiff was forgetful, Tr. 229, and his hobbies included "watching t.v., camping, hunting, BBQ's with family and friends, fishing, sons football, boating." Tr. 230. She stated Plaintiff attended football games several times each month, camped every summer, and hunted and fished every other season. tr. 230. To the extent Plaintiff's spouse offered an opinion as to specific limitations, her opinion generally mirrored Plaintiff's own allegations. As the lay testimony generally described the same limitations alleged by Plaintiff, and as the ALJ did not err in rejecting Plaintiff's own testimony as to the extent of his limitations, the ALJ did not err in giving little weight to the lay testimony of Plaintiff's spouse. *Molina*, 674 F.3d at 1122.

The ALJ also rejected a letter from Plaintiff's employer. Plaintiff worked for this employer after his last date insured. The ALJ noted:

> Jennifer Johnson provided a letter in support of the claimant's disability application dated August 2016. She stated when she was the claimant's manager in 2014 when he was employed with Double Trouble Inc. She stated that to assist the claimant in finding sustainable employment, she attempted to several different job duties that the claimant could perform. After a few months in varying positions, his health issues increasingly caused loss of time on the job. He physically appeared to be in an extensive amount of discomfort at work. Eventually, the claimant was unable to work at all in any of the duties in which he had been trained. Her opinion is given little weight. Her assessment does not square with the claimant's robust activities of daily living and the overall medical evidence record showing psychogenic causes for the claimant's complaints,

unremarkable neurological examinations and no surgical intervention for his spine.

Tr. 843 (internal citations omitted).

The Court addressed the ALJ's interpretation of Plaintiff's daily activities above. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")). The ALJ's contrast of the employer's opinion with Plaintiff's activities of daily living is a germane reason for giving that lay opinion little weight. Additionally, as Plaintiff first worked for the employer after his date last insured, evidence of Plaintiff's condition at that later date is not relevant to Plaintiff's burden of establishing disability prior to the date last insured. *Daphne v. Comm'r Soc. Sec. Admin.*, 2018 WL 5919687 *10-11 (W.D. Wa. 2018).

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 25th day of September, 2019.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge